[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO VACATE OR MODIFY INJUNCTION #107
The present case arises from an application to confirm arbitration award and application for temporary injunction pendente lite filed by the plaintiff, NCO Teleservices, Inc. (NCO), against the defendant Northeast Mortgage Corp., LLC. The sheriff's return indicates that service of the application to confirm arbitration award and application for temporary injunction pendente lite was made on May 9, 2000, on Paula V. Borsari, CPA, the controller and the person in charge at the time at Northeast Mortgage Corporation, LLC, 800 Main Street South, Southbury, Connecticut. The application is brought pursuant to General Statutes § 52-417 and seeks to confirm the arbitration award made in favor of NCO on March 1, 2000, in the amount of $118,452.41. The application alleges that on May 29, 1998, the plaintiff contracted to provide telemarketing services to the defendant. The agreement contained an arbitration clause in the event of default. The defendant terminated the agreement in April 1999, owing the plaintiff $113,739.24 exclusive of interest and costs. The application alleges that the defendant failed to pay the sums due.
On May 3, 2000, the plaintiff filed an application for temporary injunction pendente lite, pursuant to General Statutes § 52-422.[1]
The application alleges that in May 1999, the plaintiff instituted arbitration with the American Arbitration Association as provided under the agreement. On February 29, 2000, the arbitration was heard by John A. Maher, an arbitrator selected by the association. On March 1, 2000, following a full hearing including the presentation of testimony and evidence, the arbitrator made a written arbitration award in favor of the plaintiff in the amount of $118,452.41, plus costs. On March 24, all parties were notified of the award. The application alleges that prior to the actual arbitration hearing, counsel for the defendant indicated that if an award was entered in favor of NCO, and NCO moved to confirm the award in Connecticut, the defendant would move to vacate the award and appeal any decision. The application alleges that the defendant's motive was to prolong or inhibit NCO's ability to collect the arbitration award or subsequent judgment. The application alleges that notwithstanding the arbitration award, the defendant failed, neglected and refused to pay the plaintiff. CT Page 11443
The plaintiff requested the order for temporary injunction on the ground that the defendant will possibly sell, transfer or otherwise dispose of property during the pendency of the application to confirm arbitration award and because of the plaintiff's potential inability to collect on the arbitration award or judgment. The plaintiff further alleged that it would likely suffer harm and injury unless the defendant is restrained from selling, transferring or disposing of any property or assets prior to the entry of an order confirming the arbitration award. On May 4, 2000, the court ordered a hearing on the application to confirm arbitration award to be held on May 22, 2000. Further, on May 4, 2000, the court, Holzberg, J., entered an order to show cause on the application for temporary injunction pendente lite. This court held the hearing and entered judgment confirming the arbitration award on May 22, 2000.[2] Further, this court entered an order for temporary injunction on June 8, 2000, enjoining the defendants from selling, transferring or disposing of any property or assets prior to the resolution of any appeal from the judgment confirming the arbitration award in the present action.
On June 2, 2000, the defendant filed a motion to open judgment confirming arbitration award. In support of its motion, Christopher G. Winans, counsel for the defendant, filed an affidavit stating that on May 3, 2000, the plaintiff filed an application to confirm arbitration award. The affidavit states that Winans received a blank copy, without a notice and hearing date and appeared for the defendant. Winans' appearance was signed on May 10, 2000, and was filed on May 12, 2000. The affidavit states that on May 9, 2000, the plaintiff served one of the defendant's employees, Paula Borsari, with a copy of the application that had been completed by the court with a hearing date. The affidavit states that Borsari is not an officer or director of the defendant company, nor is she the statutory agent for service of process. The affidavit states that pursuant to General Statutes § 34-105, a limited liability company (LLC) must be served via its agent for service. The affidavit states that the defendant's agent for service is Joseph Biraglia, P.C., located at 24 Shelter Rock Road, Danbury, Connecticut.
On June 13, 2000, the defendant filed the present motion to vacate or modify injunction order on the ground that the plaintiff failed to effectuate proper service on the defendant. On June 15, 2000, the plaintiff filed an objection to the defendant's motion to vacate or modify the injunction order on the ground that the defendant was properly served with notice of the hearing on the order to show cause and application for temporary injunction pendente lite.
"Arbitration is the voluntary submission, by the interested parties, of CT Page 11444 an existing or future dispute to a disinterested person or persons for final determination." (Internal quotation marks omitted.) Fink v.Golenbock, 238 Conn. 183, 194, 680 A.2d 1243 (1996). "Arbitration is favored by courts as a means of settling differences and expediting the resolution of disputes. . . . [A]rbitration awards are generally upheld and . . . [courts] give great deference to an arbitrator's decision since arbitration is favored as a means of settling disputes." (Internal quotation marks omitted.) Bridgeport Firefighters Assn. v. Bridgeport,48 Conn. App. 667, 669-70, 711 A.2d 1188 (1998).
In the motion presently before the court, the defendant moves to vacate or modify the injunction order entered by this court on June 8, 2000. The defendant argues that proper service of the application for a temporary injunction was not effectuated because the plaintiff failed to serve the defendant's statutory agent for service of process under General Statutes § 34-105(a).[3] The defendant argues that because it was not properly served, it was deprived of its right to notice and a hearing and seeks to vacate the injunction order pending a hearing on the merits.
General Statutes § 34-105(a) provides, "[a]ny process, notice or demand in connection with any action or proceeding required or permitted by law to be served upon a limited liability company which is subject to the provisions of section 34-104, may be served upon the limited liability company's statutory agent for service by any proper officer or other person lawfully empowered to make service. . . ." (Emphasis added.) General Statutes § 34-105(d) provides, "[n]othing contained in this section shall limit or affect the right to serve any process, notice or demand required or permitted by law to be served upon a limited liability company in any other manner permitted by law." (Emphasis added.) General Statutes § 34-105 provides alternative means of service in the absence of serving the LLC's statutory agent for service of process. See General Statutes § 34-105(b).[4] After a party has attempted and failed to serve the agent with reasonable diligence, service of process may be made by leaving a copy with the Secretary of State and by mailing a copy to the LLC at its principal office. See General Statutes §34-105(b).
The appellate courts have not yet examined service of process on an LLC under General Statutes § 34-105; the statute, however, has been interpreted in Superior Court decisions. "In order to give meaning to both § 34-105(a) and § 34-105(d), the court finds that §34-105(a) offers one possible manner in which service may be made upon a limited liability company." Bursey v. Black Rock Enterprises, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 356518 (February 4, 1999, Skolnick, J.) (24 Conn.L.Rptr. 35, 36); see alsoLeib v. Avon Financial Services, Ltd., Superior Court, judicial district CT Page 11445 of Fairfield at Bridgeport, Docket No. 327989 (November 26, 1997,Mottolese, J.) (holding that General Statutes § 34-105 "permits but does not require that service be made upon the statutory agent for service"). Bursey v. Black Rock Enterprises, supra,23 Conn.L.Rptr. 35, is not entirely instructive, however, because although the decision holds that alternative methods of service of process exist under General Statutes § 34-105(d), it does not refer to the specific method of service used by the plaintiffs. See id.
A legislative history, including a revision recommended by the Secretary of State, indicates that the purpose of General Statutes §34-105(d) is "[t]o clarify who may be appointed as agent for service of process and the procedures which [the Secretary of State] must follow in order to process such service." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1993 Sess., pp. 1585. The legislature has also enacted statutes with similar provisions to General Statutes § 34-105(d) that provide for service in any other manner permitted by law rather than the statutory agent for service of process. See, e.g., General Statutes §§ 34-13b(i) (limited partnership) § 34-38q(d) (foreign limited partnership); § 34-225(d) (foreign limited liability company); §34-508(f) (statutory trust); § 34-533(d) (foreign statutory trust); § 38a-273(e) (action or proceeding by the commissioner or state pursuant to the Unauthorized Insurers Act.).
"It is well settled that statutory construction involves a reasoned search for the legislature's intent, focusing on the language of the statute, [and] its legislative history, including the purpose and policies behind its enactment . . . [Courts] are required to construe a statute in a manner that will not thwart [the legislature's] intended purpose or lead to absurd results. . . . [Courts] must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve . . ." (Citations omitted; internal quotation marks omitted.) State v. Ehlers,252 Conn. 579, 593, 750 A.2d 1079 (2000).
In the present case, the defendant argues that under General Statutes § 34-105 an LLC must be served via its agent for service. The use of the word "may" in General Statutes § 34-105(a) indicates it is a permissive statute and that service on an LLC may be accomplished through its statutory agent for service. The statute does not limit or affect the right to serve process required by law to be served upon a limited liability company in any other manner permitted by law. See General Statutes § 34-105(d).
The question, therefore, is whether the plaintiff has made effective service on the defendant in any other manner permitted by law. The CT Page 11446 plaintiff argues that its manner of service is permitted by both statute and case law and therefore, service was not defective or a "patent misrepresentation" as alleged by the defendant. The plaintiff argues that the permissive language in General Statutes § 34-105 allows an LLC to be served in the same manner as a corporation or partnership.
The plaintiff cites PB Real Estate, Inc. v. Dem II Properties,50 Conn. App. 741, 719 A.2d 73 (1998), to illustrate the similarities between an LLC and a private corporation. "The allure of the limited liability company is its unique ability to bring together in a single business organization the best features of all other business forms — properly structured, its owners obtain both a corporate-styled liability shield and the pass-through tax benefits of a partnership." (Internal quotation marks omitted.) Id., 742. The plaintiff, therefore, argues that it has made effective service of process under General Statutes § 52-57(c) because it served the defendant's accountant as the person in charge of the business of the corporation.[5]
The plaintiff further argues that a review of the relevant dates demonstrates that the defendant was validly served with the order to show cause, application for temporary injunction and application to confirm arbitration on May 9, 2000. The plaintiff argues that Attorney Winans' appearance was signed on May 10, 2000, which was seven days after the filing of the application and two days after the order to show cause and application were served on the defendant. The plaintiff essentially argues that the defendant had actual notice of the action because Attorney Winans signed his appearance on May 10, 2000, and could have contacted the court or plaintiff's counsel regarding a court date for the temporary injunction hearing.
"An application for an order pendente lite pursuant to § 52-422 is a special statutory proceeding. The statute confers a definite jurisdiction upon a judge and it defines the conditions under which such relief may be given. . . . In such a situation jurisdiction is only acquired if the essential conditions prescribed by statute are met. If they are not met, the lack of jurisdiction is over the subject-matter and not over the parties. . . . By its express terms, § 52-422 allows the trial court to issue an order only upon application of any party to the arbitration. . . . Thus, a pending arbitration is an essential condition that must exist before § 52-422 may be invoked." (Citations omitted; internal quotation marks omitted.) Goodson v. State, 232 Conn. 175, 180,653 A.2d 177 (1995).
Further, "applications brought to confirm, modify or vacate arbitration awards are special statutory proceedings. . . . It has long been established by the courts of this state that certain statutory CT Page 11447 proceedings are not civil actions within the meaning of title 52 of the General Statutes." (Citations omitted; internal quotation marks omitted.)Das v. Rodgers, 47 Conn. App. 242, 247, 702 A.2d 664 (1997), cert. denied, 244 Conn. 904, 714 A.2d 1 (1998). Special statutory proceedings are "not controlled by the formal requirements for service of process."Middlesex Ins. Co. v. Castellano, 225 Conn. 339, 344, 623 A.2d 55
(1993).
"Once the application has been timely filed, Practice Book § 525 [now Practice Book (1998 Rev.) § 23-1] requires that the court or judge to whom the application is made shall cause to be issued a citation directing the adverse party or parties in the arbitration proceeding to appear on a day certain and show cause, if any there be, why the application should not be granted. Neither General Statutes § 52-420
nor Practice Book § 525 [now Practice Book (1998 Rev.) § 23-1] establishes any express time limit within which the moving party must serve. notice of the motion to vacate or [confirm] and the assigned hearing date upon the nonmoving party.[6] It is elementary that the [defendant] cannot be bound by the action of the court without reasonable notice and an opportunity to be heard. . . . Thus, in the absence of a specific time limit, the statute and Practice Book section are satisfied if notice was given within a reasonable time." (Citations omitted; internal quotation marks omitted.) Middlesex Ins. Co. v. Castellano, supra 225 Conn. 344.
In this case, the order for temporary injunction issued on June 8, 2000 was granted by this court pendente lite pursuant to General Statutes § 52-422. As such, this case is a special statutory proceeding related to General Statutes § 52-420, and is not controlled by the formal rules of service of process. See Goodson v. State, supra,232 Conn. 180; Middlesex Ins. Co. v. Castellano, supra, 225 Conn. 344. Thus, in absence of a specific time limit, the statute is satisfied if reasonable notice is given. See id. In this case, the sheriff's return indicates service was made on Paula V. Borsari, CPA, as the person in charge of the business of the corporation on May 9, 2000. Further, the defendant's counsel signed his appearance in this matter on May 10, 2000, and filed it on May 12, 2000. The defendant's counsel had reasonable notice of the order to show cause issued by the court,Holzberg, J., because he signed his appearance more than twelve days before the hearing on May 22, 2000. The court had jurisdiction to enter the order for temporary injunction pendente lite to protect the rights of the parties and to secure the satisfaction of the arbitration award. See General Statutes § 52-422. Accordingly, the defendant's motion to vacate or modify injunction order is denied.
SANDRA VILARDI LEHENY, J. CT Page 11448